UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA (SAN JOSE)

Larry Golden, *Pro Se* Plaintiff
740 Woodruff Rd., #1102
Greenville, SC 29607
(H) 8642885605
(M) 8649927104
Email: atpg-tech@charter.net

FILED

OCT 11 2022

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
SAN JOSE OFFICE

| | |
|---|---|
| LARRY GOLDEN<br><br>*Pro Se* Plaintiff,<br><br>V.<br><br>INTEL CORPORATION.<br><br>Defendant. | CASE NO: 5:22-cv-03828-NC<br><br>**(JURY TRIAL DEMANDED)**<br><br>**(Sherman Act) (The Clayton Act) (Unjust Enrichment) (Contributory Infringement).**<br><br>October 6, 2022 |

## PLAINTIFF'S OBJECTION TO DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S RESPONSE AND NOTICE OF AUTHORITY

Plaintiff's complaint fully complies with the pleading requirements of Federal Rule of Civil Procedure and provides Defendants fair notice of the charges against them and the grounds therefor. Discovery and argument will add further detail later; in fact, much more additional supporting factual material was provided by Plaintiff in materials filed for the Motion for Summary Judgement. This Court has subject matter jurisdiction in this matter. Additionally, Plaintiff has sufficiently alleged harm. Accordingly, for the reasons set forth herein, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss (Dkt.7); and, Defendant's Motion to Strike Plaintiff's Response and Notice of Authority (Dkt.22).

The Court has subject matter jurisdiction, despite Defendant's claim to the contrary. In *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003), the Eleventh Circuit cautioned

that the district court should only rely on Rule 12(b)(1) '[i]f the facts necessary to sustain jurisdiction do not implicate the merits of plaintiff's cause of action.' *Garcia*, 104 F.3d at 1261 (emphasis added). If a jurisdictional challenge does implicate the merits of the underlying claim, then: "[T]he proper course of action for the district court ... is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case... (quoting *Williamson v. Tucker*, 645 F.2d 404, 415-16 (5th Cir.1981)"

Under the traditional rule, when "considering a Fed.R.Civ.P. 12(b)(6) motion to dismiss, '[t]he [d]istrict court must construe the complaint in a light most favorable to the plaintiff, accept all of the factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief.'" *Amadasu v. The Christ Hosp.*, 514 F.3d 504, 506 (6th Cir. 2008), quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995).

In *Conley v. Gibson* 355 U.S. 41 (1957), the Supreme Court stated that the 12(b)(6) motion must not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

The Federal Circuit in the related case *Larry Golden v. Apple Inc.* et al (Case No. 22-1229) relied upon by the Defendant Intel in its Motion to Dismiss; the Circuit affirms on 09/08/2022 the dismissal *"without prejudice"*, of all the Defendants named in the case. Which means Plaintiff has the right to re-fill a case against any one or more of the Defendants named in the case. The Circuit expressed, Plaintiff did not provide or state "enough factual allegations".

The Federal Circuit in the next related case *Larry Golden v. Google LLC* (Case No. 22-1267) relied upon by the Defendant Intel in its Motion to Dismiss; the Circuit *vacated and remanded* on 09/08/2022, the Google case back to the District Court, because Plaintiff had established jurisdiction; stated a claim for which relief can be granted; and, established that Plaintiff's complaint and claim charts were not 'facially frivolous':

> "In the Google case, the district court again concluded that Mr. Golden's complaint was frivolous. Here, however, Mr. Golden's complaint includes a detailed claim chart mapping features of an accused product, the Google Pixel 5 Smartphone, to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189." ...
> "We conclude that the district court's decision in the Google case is not correct with respect to at least the three claims mapped out in the claim chart. Mr. Golden has

made efforts to identify exactly how the accused products meet the limitations of his claims in this chart. On remand, the district court should allow the complaint to be filed and request service of process ... no opinion as to the adequacy of the complaint or claim chart except that it is not facially frivolous."

Plaintiff did not file a cross-motion for summary judgement under local rule 56-1, Plaintiff filed the cross-motion for summary judgement in response to Defendant's conversion of a Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment; when Intel filed a motion to dismiss based on material that is outside the pleadings presented by the Plaintiff.

The Defendant Intel presented, in a 750-page attachment to its motion to dismiss (Dkt. 7-1) exhibits of cases outside the pleadings presented by the Plaintiff. (See, Atkinson Decl., ¶¶ 2-12, Exhs. A through K, attaching, respectively, the operative complaints, dismissals, and decisions on appeal.)

In *Vorleamesi v. Esper*, 2021 WL 3681163 (D. Md. Aug. 19, 2021) (Grimm, J.), the Court explained and applied the rules governing conversion of a Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment when the movant has filed a motion to dismiss or, in the alternative, for summary judgment. In *Vorleamesi*, the Court wrote that the rules do not prescribe that any particular notice be given before conversion ... "Thus, this requirement can be satisfied when a party is aware that material outside the pleadings is before the court" ... "In sum, the Court wrote that it "does not have an obligation to notify parties of the obvious."

Therefore, under *Vorleamesi*, when it is obvious that a motion to dismiss also presents summary judgment issues, the party opposing that motion [Plaintiff] is on notice that the Court may treat the motion as one under Rule 56 without further notice to the opponent.

With a Rule 12(b)(6) motion, if the court considers matters outside the pleadings, it must convert the motion to one for summary judgment and provide all parties a reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Defendant is also seeking summary judgement on the validity of Plaintiff's patents. Without Intel's patent invalidity contentions charts; a Markman's hearing; or, claim construction, Intel believes it is entitled to a dismissal of Plaintiff's patents solely on Intel's misguided opinion; regardless of what Plaintiff [inventor and patent owner], the USPTO, the PTAB, and the

3

Court of Federal Claims has published, is the subject matter of Plaintiff's patents. Defendant writes:

> "The complaint misleadingly implies that Golden has patents for "laptops," "cell phones," and "CPUs." (See Complaint, ¶ 10 ("Intel has unjustly enriched itself with the unauthorized use of Plaintiff's patented CPU(s), Plaintiff's patented new and improve laptops and desktop PCs . . ."); ¶ 74 ("Plaintiff believes Intel produced Plaintiff's patented CPUs . . .")). However, the patents referenced in the complaint, and the records attached to the complaint as exhibits, show that Golden's patents are for threat-detection devices that may use laptops, cell phones, or CPU technologies. (See Complaint at Exhs. B through H (Dkts. 1-3, 1-5, 1-7); Atkinson Decl., ¶¶ 18-24, Exhs. Q through W). Golden falsely insinuates that he owns a patent in a CPU, a claim belied by the patents themselves. (See, e.g., Complaint, ¶¶ 10, 43; Golden patents, Atkinson Decl., ¶¶ 18-24, Exhs. Q through W). Plaintiff alleges Intel "formed" a monopoly by producing "infringing" CPUs that process instructions for plaintiff's threat-detection devices. (Complaint, ¶ 1). Plaintiff alleges Intel engages in "exclusionary conduct" that "raises prices paid by consumers for Plaintiff's . . . laptops, desktop PCs, cell phones, and stall, stop, and vehicle slowdown systems." (Id. at ¶ 2). Intel's "contributory infringement commence from the manufacture of the patented CPUs . . ." (Id. at ¶ 6 (quotation marks, emphasis, and ellipsis removed from original text))."

## Intel Knew of Plaintiff's Patents

On 12/16/2010: Plaintiff's notice letters and licensing offer was mailed U.S. Postal Service, Certified Mail to Mr. Paul S. Otellini, President & CEO Intel, and Mr. Curt J. Nichols, VP Intel Capital Intel, at Mission College Blvd., Santa Clara, CA 95054-1549. Intel received and signed for the letters 12/20/2010. Phone: 408-765-8080. Tracking Nos: 7010 1870 0002 0193 0360 and 7010 1870 0002 0193 0377. (Attached as Exhibit F in Plaintiff's Response (Dkt.21); and, attached in this Case 5:22-cv-03828-NC, at Dkt. 1-7; filed 06/28/22)

35 U.S.C. 122(e), provides a mechanism for third parties [Intel] to submit patents, published patent applications, or other printed publications of potential relevance to the examination of a patent application with a concise description of the asserted relevance of each document submitted. Retrieved from: Third-Party Pre-issuance Submissions: 35 U.S.C. 122(e)

Between the years 2010 and 2013, Intel could have intervened on 5 patent applications, that are now issued as Plaintiff's '752, '761, '891, '990, and '280 patents; and provide the USPTO with patents, published patent applications, or other printed publications of potential relevance to the Examiner to prevent my patents from being granted. Intel failed to intervene.

The Leahy–Smith America Invents Act (AIA) is a United States federal statute that was passed by Congress and was signed into law by President Barack Obama on September 16, 2011. Under the Bill, an *inter partes review* (IPR) allows Intel to challenge the validity of any claim(s) in a patent after the first year. Intel failed to challenge the patents at the PTAB with a petition for *inter partes review* (IPR).

Between the years 2015 and 2021, Intel could have intervened on 4 more patent applications, that are now issued as Plaintiff's '189, '439, '287, and '619 patents; that includes at least 25 independent claims for a new and improved laptop, desktop PC, tablet, cell phone, or smartphone. Intel failed to intervene.

Which means, if Intel had patents for the new and improved laptop, desktop PC, tablet, cell phone, or smartphone, they could have submitted the patents, published patent applications, or other printed publications of potential relevance to the USPTO Examiner and prevented my patents from being granted. Intel made the decision to ignored Plaintiff's patents.

The US District for the Eastern Court of Texas in *Motiva Patents, LLC v. HTC Corporation,* E.D. Texas, 9:18-cv-00179 (Oct. 2019), ruled that having a policy of ignoring others' patents is sufficient grounds to support claims of willful patent infringement.

The Eastern District Court found HTC's policy of ignoring others' patents opened the door for support of Motiva's assertions that HTC willfully infringed upon Motiva's patents. The court stated that intentionally being blind [] was essentially the same as knowing about a competitor's patent and infringing on it anyway.

## Intel Knew Its Actions Would Lead to the Infringement of Plaintiff's Patents

Intel's liability for contributory infringement of Plaintiff's patent(s) is defined by 35 U.S.C. § 271(c): "Whoever offers to sell or sells within the United States ... a material or an apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, ... shall be liable as a contributory infringer."

The threshold requirement for a claim of contributory infringement is the existence of direct infringement. *See Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 518 (1972). There must also be a showing that the alleged contributory infringer knew of the patent and that his or

5

her actions would lead to infringement of the patent. *See Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476 (1964).

Intel was knowledgeable of Plaintiff's communicating, monitoring, detecting, and controlling (CMDC) devices. Plaintiff is alleging facts that supports Plaintiff's claim that Intel had prior knowledge of Plaintiff's patented CPUs designed for Plaintiff's CMDC devices."

On 12/16/2010: Plaintiff's notice letters and licensing offer was mailed U.S. Postal Service, Certified Mail to Mr. Paul S. Otellini, President & CEO Intel, and Mr. Curt J. Nichols, VP Intel Capital Intel, at Mission College Blvd., Santa Clara, CA 95054-1549. Intel received and signed for the letters 12/20/2010. Phone: 408-765-8080. Tracking Nos: 7010 1870 0002 0193 0360 and 7010 1870 0002 0193 0377. (Attached as Exhibit F in Plaintiff's Response (Dkt.21); attached in this Case at Dkt. 1-7; filed 06/28/22)

Intel was given twelve (12) years to produce a patent(s) that invalidates Plaintiff's patents for Plaintiff's Communicating, Monitoring, Detecting, and Controlling (CMDC) Device (i.e., new and improved desktop PCs; laptops; tablets, etc.) and Plaintiff's Central Processing Units (CPUs). During the same time period Intel had every opportunity to negotiate a licensing agreement with Plaintiff.

The US District for the Eastern Court of Texas in *Motiva Patents, LLC v. HTC Corporation,* E.D. Texas, 9:18-cv-00179 (Oct. 2019), ruled that having a policy of ignoring others' patents is sufficient grounds to support claims of willful patent infringement.

The Eastern District Court found HTC's policy of ignoring others' patents opened the door for support of Motiva's assertions that HTC willfully infringed upon Motiva's patents. The court stated that intentionally being blind to the facts was essentially the same as knowing about a competitor's patent and infringing on it anyway.

The basic principle of "ignorance of the law is no excuse" applies to patent infringement—as the defendant in a Texas patent case discovered.

Contributory infringement – otherwise known as 'indirect infringement' or 'infringement by supply' includes actions that contribute (or potentially contribute) to someone else infringing a patent, even if those actions do not directly infringe the patent.

When Intel imports, sells or offers to sell a component or part [Intel's CPU, Chipset, Processor, or SoC] that's used exclusively for a patented item [Plaintiff's CMDC devices—new

6

and improved desktop PC; laptop; tablet, etc.] or process, is likely contributorily liable. Intel do not have to be involved in the sale, manufacture or use themselves to be liable.

The Claim Charts presented in this case identifies how Intel has likely contributed to the infringement of Plaintiff's patents. The violations are too massive to be coincidental.

## Intel is Engaged in a "Systematic Campaign" of Illegal Conduct to Protect Its Monopoly

The U.S. Federal Trade Commission: "Intel has engaged in a deliberate campaign to hamstring competitive threats to its monopoly," Richard Feinstein, director of the FTC's Bureau of Competition, said in a statement. "It's been running roughshod over the principles of fair play and the laws protecting competition on the merits. The commission's action [] seeks to remedy the damage that Intel has done to competition, ***innovation***, and, [] the American consumer."

According to the information presented in the previous pleadings, Intel has a history of being engaged in a "systematic campaign" of illegal conduct to maintain its monopoly, that has harmed competition and enabled Intel to unjustly enrich itself.

Defendant wants this Court to believe Plaintiff's claim is *frivolous*. A frivolous claim, often called a bad faith claim, refers to a lawsuit, motion or appeal that is intended to harass, delay or embarrass the opposition. Considering Intel's history, Plaintiff claim has merit.

A claim is frivolous when the claim lacks any arguable basis either in law or in fact *Neitze v. Williams*, 490 U.S. 319, 325 (1989). That means, in a frivolous claim, either: (1) "the 'factual contentions are clearly baseless,' such as when allegations are the product of delusion or fantasy;" or (2) "the claim is 'based on an indisputably meritless legal theory'." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998).

Plaintiff certifies that to the best of Plaintiff's knowledge, information, and belief, formed after reasonable inquiry, that this complaint against Intel, is not frivolous, and is well-grounded in fact and is warranted by existing law, and that it is not interposed for any improper purpose, such as to harass or to cause frivolous litigation.

## Conclusion

In Intel's Motion to Dismiss, Intel proceeded to give a long dialogue on how subject matter of Plaintiff's case does not have jurisdiction; how Plaintiff has not made a claim that

7

entitles him to relief; how Plaintiff's charts are just a "dazzling array"; and, that Plaintiff's complaint is "frivolous". The Federal Circuit in *Larry Golden v. Google LLC* (Case No. 22-1267) addressed Defendants' theories:

> "In the Google case, the district court again concluded that Mr. Golden's complaint was frivolous. Here, however, Mr. Golden's complaint includes a detailed claim chart mapping features of an accused product, the Google Pixel 5 Smartphone, to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189." … "We conclude that the district court's decision in the Google case is not correct with respect to at least the three claims mapped out in the claim chart. Mr. Golden has made efforts to identify exactly how the accused products meet the limitations of his claims in this chart. On remand, the district court should allow the complaint to be filed and request service of process … no opinion as to the adequacy of the complaint or claim chart except that it is not facially frivolous."

Why should Intel be allowed to avoid liability because Plaintiff is not an Attorney that has multiple years of procedural "trickery" to depend on to win a case?

Plaintiff has not disobeyed any Court orders.

Sincerely,

*Larry Golden* (signature)

Larry Golden, *Pro Se* Plaintiff

740 Woodruff Rd., #1102

Greenville, SC 29607

(H) 8642885605

(M) 8649927104

Email: atpg-tech@charter.net

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 6th day of October, 2022, a true and correct copy of the foregoing "Plaintiff's Objection to Defendant's Motion to Strike Plaintiff's Response and Notice of Authority", was served upon the following Defendant by priority "express" mail:

>Richard Tyler Atkinson
>McManis Faulkner
>50 West San Fernando Street, 10th Floor
>San Jose, CA 95113
>Phone: (408) 279-8700
>Fax: (408) 279-3244
>Email: tatkinson@mcmanislaw.com

*Larry Golden*

Larry Golden, Pro Se
740 Woodruff Rd., #1102
Greenville, South Carolina 29607
atpg-tech@charter.net
864-288-5605